FILED
2019 Oct-31  PM 12:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **AMBER TURNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | _____ |
| **vs.** | ) | |
| | ) | |
| **MJTV, LLC d/b/a JIMMY'S** | ) | |
| **LOUNGE; JAMES M. HOLT,** | ) | |
| **And MICHAEL HOLT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Amber Turner states the following as her Complaint against MJTV, LLC,

d/b/a/ Jimmy's Lounge ("Jimmy's"), James M. Holt; and Michael Holt.

## I. INTRODUCTION

Amber Turner was an exotic dancer/entertainer at an establishment known as

Jimmy's Lounge in Madison County, Alabama. This is a claim brought under the

Fair Labor Standards Act, 29 U.S.C. § 201, *et.seq.* ["FLSA"] for failure to pay a

minimum wage.

Defendants willfully engaged in a pattern, policy and practice of unlawful

conduct for the actions alleged in this Complaint. Defendants willfully failed to pay

Plaintiff the minimum wage she was entitled to under applicable federal laws.

Additionally, Defendants engaged in unlawful tip splitting by requiring dancers to

1

split and share gratuities given to them by patrons with their non-tipped employees, including bouncers and disc jockeys.

Plaintiff brings this action seeking damages, back pay, restitution, liquidated damages, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## II.  **JURISDICTION AND VENUE**

1.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

2.     Jimmy's annual sales exceed $500,000, and it employs more than two persons in commerce, so the FLSA applies. 29 U.S.C. § (s)(1)(A)(i)-(ii).

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## **THE PARTIES**

4.     Amber Turner is a resident of Jefferson County, Alabama, and is over the age of nineteen (19).  Amber Turner has worked as an exotic dancer at Jimmy's from 2011 to the present.  She worked there consistently from January 2017, to April of 2019.

5.     Ms. Turner was:  (1) misclassified as an independent contractor and as a result, was not paid the wages she was entitled to as an employee; (2) she was required to split income with Defendant as described more fully below.

6.     MJTV, LLC d/b/a Jimmy's is a business entity operating as a lounge and nightclub featuring exotic dancer entertainment in Madison County, Alabama. As explained below, MJTV, LLC, is a successor to JAH, LLC, which operated Jimmy's until sometime after 2017.

7.     Jimmy's intentionally and with knowledge of the law prohibiting the practice, classified exotic dancers as independent contractors, as opposed to employees.  This was done solely to avoid paying them minimum wage, as required under the FLSA.

8.     James M. Holt is an individual, over the age of nineteen (19) years, residing in Madison County, Alabama, who at all pertinent time directed, in concert with his son, Michael Holt, the terms and conditions of employment for exotic dancers at Jimmy's.

9.     Michael Holt is an individual, over the age of nineteen (19) years, residing in Madison County, Alabama.

## IV.   FACTUAL ALLEGATIONS

### A.   Facts Relating To Liability of James and Michael Holt.

10.    James and Michael Holt (collectively "the Holts"), at all times pertinent to the case, dominated the operation of Jimmy's.  The Holts set and enforced all policies with regard to the terms and conditions of employment for exotic dancers.

11.    The Holts set each policy related below regarding work hours, tip-outs, payment for private dances, and any other requirements of exotic dancers at Jimmy's.

12.    Prior to MJTV's creation and taking over control of Jimmy's, it was operated, nominally, by JAH, LLC.  However, the corporate entity was largely disregarded as the Holts regularly took large payments from the business.

13.    In March of 2019, the Holts caused JAH, LLC, to be dissolved. However, very little changed with regard to the actual operation of Jimmy's.  The business was then nominally ran by another corporate entity, but the Holts continued to dominate its operation, just as they had always done.

14.    The Holts caused the dissolution of JAH, LLC, however, they continued to run the business nominally through another corporation, MJTV, LLC ("MJTV").

15.    MJTV is liable to Plaintiff for Ms. Turner's FLSA claims as the successor to JAH, LLC.

16.     MJTV is liable as the successor to JAH, LLC, for the principal reasons set forth below.

17.     First, there is substantial continuity between the operations of Jimmy's under JAH, LLC, and MJTV.  Mr. Holt and the management team at Jimmy's, largely his family, have continued to own the business entities nominally designated as running Jimmy's, and nothing, operationally, changed upon the dissolution of JAH, LLC, and the creator of MJTV for the purposes of operating Jimmy's.

18.     In fact, as recently as September 1, 2019, the Jimmy's Facebook page said, "Attention: I know there's been rumors floating around.  Here is the truth. Jimmy's is not being sold and has not been sold.  It is still under the same ownership and management.  Jimmy's has been under the same family for 30 years and it will always be that way."  Jimmy's management itself admits to a continuity of ownership.

19.     There is certainly also notice to MJPV of the practices of JAH, LLC. These are the same people.  Moreover, JAH, LLC, settled a lawsuit brought by exotic dancers under the same theories Ms. Turner brings, and was well aware of the liability it had for continuing the same unlawful practices.

20.     Lastly, MJTV can provide relief in this case as it is, for all intents and purposes, the same as JAH, LLC.  It has no more and no less ability to provide relief to Ms. Turner than JAH, LLC, because they are the same business with the same

location, physical assets, capital structure, work force, management structure, and management initiatives and practices as JAH, LLC.

21.     Not only does MJTV have FLSA liability as the successor to JAH, LLC, but James Holt is liable, individually, to Ms. Turner, as an employer as that term is defined under 29 U.S. C. § 203(d).

22.     The Holts are, and have been at all times relevant to this action, in a position to control the work activities of Ms. Turner and the other exotic dancers at Jimmy's.  The Holts at all times had the power to, and did on occasion, hire and fire exotic dancers at Jimmy's.  The Holts, at all pertinent times, made the management decisions regarding exotic dancers in implementing and enforcing the hours, work schedules, and working conditions of the exotic dancers outlines herein.

23.     The Holts determined how exotic dancers such as Ms. Turner would be paid, and how tip-outs and dance fees would be split and accounted for.  Finally, the Holts maintained what employment records were kept at Jimmy's.

24.     In short, the Holts directed all of the terms and conditions of Ms. Turner's employment.

**B.      Facts Relating To Working Conditions For Exotic Dancers at Jimmy's.**

25      Plaintiff has been intentionally misclassified by Jimmy's as an independent contractor.

6

26.     Plaintiff has not been paid a minimum wage by Jimmy's.

27.     No exception to the FLSA applies to Plaintiff.

28.     At all relevant times, Jimmy's directly and indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff.

29.     Plaintiff incurred financial loss, injury and damage as a result of Jimmy's business practice of misclassifying her as an independent contractor and failing to pay her a minimum wage.

30.     Plaintiff generated her income solely through the monies she received from customers when she performed exotic dances.

31.     All monies that Plaintiff received from customers in the performance of exotic dances were, as described below, either tips or service fees.  In either case, as described below, Jimmy's had no right to keep any portion of them.  These payments were given by patrons directly to and/or solely for services performed by Plaintiff and therefore, it considered tips, belong to Plaintiff, not Jimmy's.

32.     The payments Plaintiff received from patrons in relation to exotic dances were not taken into Defendant's gross receipts, with a portion then paid out to Plaintiff.  Defendant does not issue W-2 forms, 1099 forms or any other documents to the Plaintiff indicating any amounts being paid from their gross receipts to the Plaintiff as wages.

33.     Plaintiff was considered a tipped employee, as she was engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips, if dance fees are considered tips.  No tip credits offsetting any minimum wages due, however, are permitted.  Therefore, Plaintiff is entitled to: (i) minimum wages for all work performed; and (ii) the full amount of any monies given to her by customers for the performance of exotic dances.

34.     Jimmy's misclassification of Plaintiff was specifically designed to deny her fundamental rights as an employee to receive minimum wages, to demand and retain portions of tips given to her by customers, and to enhance Jimmy's profit margin at the expense of Ms. Turner and the other dancers.

35.     Jimmy's  misclassification of Plaintiff was willful.

36.     Jimmy's knew or should have known that Plaintiff was improperly misclassified as an independent contractor.

37.     The determining factor as to whether Plaintiff is an employee or independent contractor under FLSA is not the workers' or employees' election, subjective intent, or any contract.  Rutherford FoodCorp. v. McComb, 331 U.S. 722, 727 (1947).  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for themselves and truly independent, or rather is economically

dependent upon finding employment in others.  In this case, dependent upon Jimmy's to make a living.

38.    Workers cannot "elect" to be treated as employees or independent contractors under threat of adverse treatment.  Nor can workers agree to be paid less than the minimum wage.  Despite this, Jimmy's unfairly, unlawfully, fraudulently and unconscionably coerced Plaintiff to waive her statutory rights and elect to be treated as independent contractor.

39.    Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They are: (1) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

40.    The totality of circumstances surrounding the employment relationship between Defendant and Plaintiff establishes economic dependence by Plaintiff on Defendant and employee status.  Here, Plaintiff was not in business for herself and truly independent, but rather was economically dependent upon finding employment with Defendant.  Plaintiff did not engage in an occupation or business distinct from that of Jimmy's.  To the contrary, Plaintiff and the other dancers were and are the

basis for Jimmy's business.  Without exotic dancers, Jimmy's cannot exist as a "Gentlemen's Club."

41.    Jimmy's obtains the customers who seek out exotic dance entertainment and provides the workers who conduct the exotic dance services. Jimmy's retains pervasive control over the Club's operations as a whole, and Plaintiff and the other dancers' duties are an integral part of those operations.

## B.    Degree of Control Exercised by Defendant.

42.    Plaintiff and the other dancers do not exert control over any meaningful part of Jimmy's operations, and do not stand as separate economic entities from Jimmy's.  Defendant exercises control over all aspects of the working relationship with Plaintiff and the other dancers at the Club.

43.    Plaintiff's economic status is inextricably linked to conditions over which Jimmy's has complete control, including but not limited to, advertising and promotion, the atmosphere and surroundings at the club, the flow of customers into the club, and the customer volume.

44.    Jimmy's employs guidelines and rules dictating the way in which Plaintiff and the other dancers must conduct themselves while working.  These guidelines include, but are not limited to:

> a.    Requiring the dancers to report for work at specific times, and stay specific hours.  If the dancers left early, they would be forced to pay the club extra;

b.    Requiring a particular number of shifts per week;
c.    Setting the prices of private dances;
d.    Controlling when the dancers will be on stage; and
e.    Approval of wardrobe.

45.    Jimmy's controls the conduct of dancers while at work, including how dances are to be performed.  How often the dancers are to be on stage performing, and requiring dancers to mingle with patrons in a manner which supports Defendant's general business plan, but to no benefit of the dancers.

46.    Jimmy's requires dancers to literally pay management a fee to work there.  They also must pay pre-determined "tip-outs" to non-tipped employees such as bouncers, managers and disc jockeys.  The amounts fluctuated, seemingly at the whim of the manager on duty.  One thing remained constant, however; the dancers had to pay these non-tipped employees to work there, or they would be fired.

47.    Jimmy's requires that shifts commence at particular times for a minimum number of hours.  For example, Jimmy's requires dancers to report to management at the beginning and end of each shift.  If a dancer is late or absent for a shift or does not appear timely for her dance on stage, a dancer is subject to a monetary penalty.

48.    Dancers are required to complete the entirety of their shifts, and are not permitted to leave early without penalty.  In the event the dancer leaves a shift early, she is subjected to a monetary fine.

49.     Jimmy's imposes other penalties on dancers related to maintaining their weight and other certain aspects of their physical appearance.

50.     One element of a dancer's job is performing private exotic dances in a VIP room.  Jimmy's, not the dancers, establishes a minimum rate per song that dancers must collect from patrons when performing exotic dances in the VIP room. Jimmy's then imposes a charge, usually $5.00, for each dancer to use the VIP room in performance of an exotic dance.  She must "tip-out" the payment at the end of each dance.  The "tip-out" charges for the VIP room would increase as the time a patron spent in the VIP room increased.

### C.     <u>Facts Negating Skill and Initiative of a Person in Business for Themselves</u>.

51.     Plaintiff did not exercise the skill and initiative of a person in business for herself.

52.     Plaintiff was not required to have any specialized or unusual skills to work, and the skills utilized in performing exotic dances are commensurate with those exercised by ordinary people.

53.     Plaintiff did not have the opportunity to exercise the business skills and initiative necessary to elevate her status to that of independent contractors as she owned no enterprise, nor did she maintain separate business structures or facilities.

54.    Plaintiff had no control over customers, nor did she actively participate in any efforts to increase Jimmy's client base, profit, or to improve business in any capacity.

55.    A dancer's own initiative is limited to wardrobe, which is itself subject to final approval by Jimmy's, and how provocatively to dance, actions both of which are consistent with the status of an employee as opposed to an independent contractor.

56.    Plaintiff was not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenue, as an independent contractor in business for themselves would have the authority to do.

**D.    <u>Facts Establishing Relative Investment</u>.**

57.    Plaintiff's relative investment is minor when compared to the investment made by Jimmy's.

58.    Plaintiff made no financial investment in facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory.  All capital investment and risk belongs to Jimmy's.

59.    Plaintiff's investment is limited to expenditures on wardrobe and make-up.  Absent Jimmy's investment and provision of the club work environment, Plaintiff would not have earned anything.

### E.   **Facts Establishing Opportunity for Profit and Loss.**

60.     Jimmy's manages all aspects of the business operation, including but not limited to attracting investors, maintaining the premises, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff.  Jimmy's provides all necessary capital to open and operate the business.

61.     Plaintiff had no responsibility for any aspect of Jimmy's ongoing business risk.  Jimmy's secures all financing, the acquisition and/or lease of the physical facility and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses).  Jimmy's alone is responsible for securing all necessary and appropriate insurance and licenses.  Jimmy's sets the minimum dance tip and other tip amounts that should be collected from patrons, and establishes the tip splitting policy for dances performed in the VIP rooms.

### F.   **Facts Establishing Permanency.**

62.     Plaintiff worked fairly regularly at Jimmy's, as alleged above.

### G.   **Facts Establishing Plaintiffs are Integral Part of Employer's Business.**

63.     Exotic dancers like Jimmy's are critical to the success of Jimmy's and its very operation is wholly dependent on the existence of exotic dances being provided by dancers for patrons.

64.    The primary "product" or "good" Jimmy's is in business to sell consists of dances performed by the exotic dancers.  Other goods sold by Defendant include drinks and food, which are served to patrons by waitresses, shot girls, and bartenders.

65.    Plaintiff has been misclassified as an independent contractor and should have been paid minimum wages at all times she worked.

### H.    Facts Establishing Defendant's Acts were Willful.

66.    All of the actions described herein were willful, intentional and not the result of mistake or inadvertence.

67.    Jimmy's is aware that the FLSA applies to its business at all relevant times and that under the economic realities test applicable to determining employment status under those laws the dancers were misclassified as independent contractors.

68.    Jimmy's was aware of and/or the subject of previous litigation and enforcement actions relating to wage and hour law violations where the misclassification of exotic dancers as independent contractors was challenged.

69.    Exotic dancers working under conditions similar to those employed at Jimmy's have been determined to be employees under the wage and hour laws, not independent contractors.

70.     Jimmy's was aware, and had actual or constructive notice, that applicable law rendered all tips given to class members by patrons when working were Plaintiff's sole property, rendering its tip-share, and tip-out scheme unlawful.

71.     Despite this notice of their violations, Jimmy's intentionally chose to continue to misclassify dancers like Plaintiff, withhold payment of minimum wages and require dancers to split their tips in an effort to enhance their profits.  Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

72.     Ms. Turner was employed by Jimmy's Lounge as an exotic dancer off and on from some time in 2011, until approximately March or April of 2019.

73.     Ms. Turner was a named plaintiff in a collective action against Jimmy's styled Miller, et al. v. JAH, LLC, Civil Action No.: 5:16-cv-01543.  That action was brought on behalf of exotic dancers at Jimmy's, and contained many of the same allegations that this case does.

74.     Ms. Turner, however, voluntarily dismissed her case after a meeting with Jimmy's management.  Her case was dismissed, without prejudice, on November 17, 2017.

75.     Ms. Turner continued to work at Jimmy's as an exotic dancer.

76.     The above-referenced lawsuit was settled by the remaining parties, after the Court granted conditional certification.

77.    The settlement of the case was approved on May 28, 2018.

78.    Ms. Turner continued to work at Jimmy's, and was hopeful that the lawsuit would change working conditions at the nightclub.  Conditions changed very little.

79.    Ms. Turner still had to pay Jimmy's $5.00 out of every $25.00 she received for private dances.  Ms. Turner continued to have to pay a tip-out every time she worked at Jimmy's of $25.00, although the amount varied.  She also continued to have to pay the disc jockey out of the money she collected for on stage dances, and for private dances.

80.    One thing that did change was that Ms. Turner and the other dancers were told that they were going to be required to clock in, and that they were required to work at lease six (6) hours for each shift.

81.    Ms. Turner and the other dancers were also told that they would be paid the tipped rate of $2.13 for each hour worked at the club.  It would appear that Jimmy's was now taking the position that the dancers were employees, who were tipped employees.

82.    However, Ms. Turner did not receive her $2.13 per hour as a tipped employee.  Moreover, Jimmy's confiscation of the tip-out, disc jockey, monies, and $5.00 for each private dance is an unlawful confiscation of tips which under the law, belong to Ms. Turner.

## V.   INJURY AND DAMAGE

83.    Plaintiff was harmed, and incurred damage and financial loss as a result of Jimmy's conduct complained of herein.

84.    Plaintiff was entitled to minimum wages and to retain all of the private dance tips and other tips she was given by patrons.  By failing to pay Plaintiff minimum wages and interfering with her right to retain all of the dance tips and other tips she was given by patrons, Jimmy's injured Plaintiff, causing her financial loss, harm, injury and damage.

## VII.   CAUSES OF ACTION

### COUNT I - VIOLATION OF THE FLSA
**(Failure to Pay Statutory Minimum Wages Against All Defendants)**

85.    Plaintiff hereby incorporates all of the preceding paragraphs as if fully stated herein.

86.    James and Michael Holt, as described above, because of the control they exercised over Ms. Turner, are "employers" as that term is defined by 29 U.S.C. § 203(d), and are thus individually liable.  Each claim under this Court is made against the Holts, individually, as well as against MJTV, LLC.

87.    This claim arises out of Defendant's willful violation of the Fair Labor Standards Acts, 29 U.S.C. Sec. 201, et seq., for failure to pay a minimum wage to Plaintiff to which she was entitled.

18

88.     At all relevant times, Jimmy's employed Plaintiff within the meaning of the FLSA.

89.     At all relevant times, Jimmy's has been engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201.

90.     At all relevant times, Jimmy's was an enterprise whose annual business income was in excess of $500,000, pursuant to 29 U.S.C. § 203(5)(1)(A)(ii).

91.     The minimum wage provisions of the FLSA, 29 U.S.C. 201 et seq., apply to Jimmy's, and protect Plaintiff.

92.     Pursuant to 29 U.S.C. § 206, Plaintiff was and is entitled to be compensated at the rate of $7.25 per hour.

93.     29 U.S.C. § 207(a) provides in pertinent part:

> ... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

94.     Jimmy's failed to pay Plaintiff the minimum wage set forth in 29 U.S.C. § 206, or any wages whatsoever.

95.   Jimmy's failed to pay Plaintiff a minimum wage throughout the relevant time period because Jimmy's intentionally misclassified her as an independent contractor.

96.   The amount paid to Plaintiff by patrons in relation to private dances or other services performed were tips, not wages.  Those tips were not the property of Jimmy's.

97.   The private dance fees are paid directly to the dancers by customers, not by Jimmy's.  Thus, they cannot be wages.

98.   Courts have classified private dance fees paid by customers of erotic dance clubs as either tips or service fees.  In either case, Jimmy's cannot confiscate the private dance fees and they are due to be returned to Plaintiff.  If the private dance fees are considered tips, then Jimmy's has no right to them because under the FLSA an employer may not keep any portion of employees' tips . . ."  29 U.S.C. § 203(m)(2)(B).

99.   It could be argued that the private dance fees are service fees paid to the establishment.  However, in such a case, Jimmy's still would not be able to retain them, nor would it be able to claim such confiscated private dance fees as a credit against its minimum wage obligation.

100.   In order to take the private dance fees as a credit, Jimmy's would have to actually pay Ms. Turner and the other dancers, and then it would have to have

both included in private dance fees in the gross revenues of the company, and then pay them out to the dancers.  This was not done.

101.   As a result, under any circumstance the amounts paid to Plaintiff by patrons in relation to private table dances cannot be used to offset Jimmy's obligation to pay Ms. Turner's minimum wages due.  See Hart v. Rick's Cabaret, Int'l, 2013 U.S. Dist Lexis 129130 (S.D.N.Y. Sept. 10, 2013) *e.g.*, Reich v. ABC/York-Estes Corp., 157 F.R.D. 668, 680 (N.D.Ill. 1994), rev'd on other grounds, 64 F.3d 316 (7th Cir. 1995); Reich v. ABC/York-Estes Corp., 1997 WL 264379 at *5-7 (N.D.Ill. 1997).

102.   Further, no tip credit applies to reduce or offset any minimum wages due.  The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips.  29 U.S.C. § 203(m).

103.   Neither of these conditions was satisfied.  Defendant did not inform Ms. Turner of the provision of § 3(m) of the FLSA, 29 U.S.C. § 203(m), even after it somewhat altered its policies; and Plaintiff did not retain all the tips received.

104.   Jimmy's did not notify Ms. Turner that her dance fees were being used to reduce the minimum wages otherwise due under FLSA's tip credit provisions and that they were still due the reduced minimum wage for tipped employees because Defendant maintained as a business strategy that Ms. Turner and the other dancers were not due a minimum wage due to the classification as independent contractors.

105.   Jimmy's requirement Ms. Turner and the other dancers split their tips, and pay Defendant a portion of all dance tips and to pay a "tip-out" to other employees who do not customarily receive tips, such as bouncers, managers and disc jockeys was not part of a legally permissible or valid tip pooling or tip sharing arrangement.

106.   Based on the foregoing, Plaintiff is entitled to the full statutory minimum wages set forth in 29 U.S.C. §§ 206 and 207 for all periods in which Plaintiff worked at Jimmy's, along with all applicable penalties, liquidated damages, and other relief.

107.   Jimmy's conduct in misclassifying Plaintiff as an independent contractor was intentional and willful and done to avoid paying minimum wages and the other benefits that Plaintiff  was legally entitled to receive.

108.   Plaintiff seeks damages in the amount of her unpaid wages, liquidated damages as provided by 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

109.   12 U.S.C. § 211(c) provides in pertinent part:

( c)    Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

110.   29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

111.   To the extent Jimmy's failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiff comprehensive statements showing the hours that they worked during the relevant time period, it also violated the aforementioned laws causing Plaintiff's damages.

112.   When the employer fails to keep accurate records of the hours worked by its employees, the rule in <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687-688 66 St.Ct. 1187 (1946) is controlling.  That rule states:

...where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he

> proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with the evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

113. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." Id.

114. Based on the foregoing, Plaintiff seeks unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-splits, liquidated damages, prejudgment interest calculated at the highest legal rate, attorneys' fees and costs, and all other costs, penalties and other relief allowed by law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, prays for an order for relief as follows:

a.  That Jimmy's be found liable to Plaintiff;

b.  For a declaration that Jimmy's violated the rights of Plaintiff under applicable law;

c.  For nominal damages;

d.  For compensatory and actual damages;

e.  For restitution of all monies due Plaintiff and disgorged profits from the unlawful business practices of Defendant;

f.  For all back pay, unpaid wages, and a refund of all tips, "rent", tip-outs, fines and other amounts paid by Plaintiff;

g.  For all statutory damages, liquidated damages, civil penalties, and/or other relief allowed by federal wage and hour statutes and regulations and/or other laws;

h.  For accrued interest;

i.  For costs of suit and expenses incurred herein, including reasonable attorneys' fees allowed under any relevant provision of law or equity, including the FLSA; and

j.  For any and all other relief that the Court may deem just, proper and equitable in the circumstances.

## JURY DEMAND

Plaintiff reserves her right to and hereby requests a trial by jury.

Respectfully submitted,

/s/ Brian M. Clark
Brian Clark
Attorney for Plaintiff

**OF COUNSEL:**
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone:  (205) 314-0500
Facsimile:  (205) 254-1500
Email:  bclark@wigginschilds.com

SERVE DEFENDANTS AT THE FOLLOWING:

MJTV, LLC
c/o Registered Agent, Michael Holt
18800 Canoebrook Lane
Toney, Alabama  35773

James M. Holt
87000 U.S. 72
Madison, Alabama  35758

Michael Holt
87000 U.S. 72
Madison, Alabama  35758